# In the United States Court of Federal Claims

**Bid Protest**
**No. 15-664C**
**Filed Under Seal:  December 21, 2015**
**Reissued for Publication:  January 27, 2016**[*]

| | |
|---|---|
| NEXAGEN NETWORKS, INC.,          ) | |
|          ) | Bid Protest; Tucker Act, 28 U.S.C. § |
|       Plaintiff,      ) | 1491(b); Motion to Dismiss; Rule |
|          ) | 12(b)(1); Rule 12(b)(6); Contract Disputes |
| v.          ) | Act, 41 U.S.C. § 7103(a); Task Order; |
|          ) | Federal Acquisition Streamlining Act, 10 |
| THE UNITED STATES,      ) | U.S.C. § 2304c(e). |
|          ) | |
|       Defendant.     ) | |
|          ) | |

*Patrick F. Timmons, Jr.*, Counsel of Record, Patrick F. Timmons, Jr., P.C., Houston, TX, for plaintiff.

*Joshua A. Mandlebaum*, Trial Attorney, Counsel of Record, *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, United States Department of Justice, Washington, DC, *Captain Harry Parent*, Of Counsel, United States Army Legal Services Agency, Fort Belvoir, VA, *Michael Kraycinovich*, Of Counsel, United States Army Materiel Command, Redstone Arsenal, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

<u>GRIGGSBY</u>, Judge

## I.    INTRODUCTION

Plaintiff, Nexagen Networks, Inc., brought this bid protest action challenging the United States Army Contracting Command's decision to terminate its contract to provide data strategy and software support services to the government and the government's subsequent corrective

---

[*] This Memorandum Opinion and Order was originally filed under seal December 21, 2015 (docket entry 45), pursuant to the protective order entered in this action on June 30, 2015 (docket entry 15).  The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted under the terms of the protective order.  The parties filed a joint status report on January 21, 2016 (docket entry 47) stating that they agreed there is no need for redactions.  Accordingly, the Court is reissuing its Memorandum Opinion and Order as originally filed.

actions with respect to that contract.  The government has moved to dismiss Nexagen's complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), or, in the alternative, for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6).  For the reasons set forth below, the Court **GRANTS** defendant's motion to dismiss.

## II.    PROCEDURAL AND FACTUAL BACKGROUND[1]

### A.    Factual Background

The relevant facts in this bid protest matter are not in dispute.  Plaintiff, Nexagen Networks, Inc. ("Nexagen"), is a government contractor and one of several awardees of a multi-award indefinite-delivery-indefinite-quantity contract to provide scientific, systems engineering, and software systems and services to the United States Army Communications and Electronics Command's Software Engineering Center.  AR at 962-64.

### 1.    Relevant Task Order

The Army Contracting Command (the "Army") procures the services called for under the contract through the award of task orders, and solicits proposals to perform those task orders through the issuance of task order requests.  AR at 964.  At issue in this bid protest matter is the award of a specific task order to provide data strategy and software support services for which the Army solicited proposals by issuing Task Order Request No. SSESR-2031 ("TOR 2031") on July 11, 2014.  AR at 161, 182, 335, 815.

On July 29, 2014, Nexagen submitted a proposal in response to TOR 2031.  AR at 2397-524.  On September 30, 2014, the Army awarded the task order pursuant to TOR 2031 to CACI Technologies, Inc. ("CACI").  AR at 2949-992.

Following a protest of that award before the United States Government Accountability Office ("GAO"), the Army elected to take corrective action by issuing an amendment to TOR 2031 ("TOR 2031-1") on November 14, 2014.  AR at 161, 1481.  The Army solicited

---

[1] The facts recounted in this Memorandum Opinion and Order are taken from the administrative record ("AR at __"); plaintiff's amended complaint ("Am. Comp. at __"); defendant's motion to dismiss ("Def. Mot. at __"); plaintiff's response thereto ("Pl. Resp. at __"); and defendant's reply ("Def. Reply at __"). Except where otherwise noted, the facts recited here are undisputed.

proposals for TOR 2031-1 from all of the government contractors that had previously submitted proposals for TOR 2031, including Nexagen.  AR at 161, 162, 3520.

On December 1, 2014, Nexagen, along with five other government contractors, submitted a proposal in response to TOR 2031-1.  AR at 2, 490-617.  The Army awarded the task order solicited pursuant to TOR 2031-1 to Nexagen on February 13, 2015.  AR at 1444-450.  The total value of TOR 2031-1 was $46,309,664.  AR at 648.

On March 6, 2015, CACI protested the award of the task order to Nexagen before the GAO.  AR at 70.1-70.2.  In March 2015, the Army also sent two e-mails to Nexagen stating that Nexagen had not complied with the performance work statement for the task order.  AR at 771-74.  In particular, the Army indicated that Nexagen had not fully staffed open positions and that some staff did not have the required experience.  AR at 771-74.  The GAO dismissed CACI's protest on March 26, 2015, after the Army advised that it intended to take corrective actions by reevaluating all proposals submitted in response to TOR 2031-1 and making a new award decision.  AR at 1491, 3526.  Subsequently, on April 20 and 21, 2015, the Army issued cure notices to Nexagen to address the Army's concerns regarding non-compliance.  AR at 775-77.

On April 27, 2015, Nexagen filed a protest before the GAO challenging the Army's decision to take corrective actions in relation to the task order.  AR at 46-54.  During the protest, Nexagen requested that the GAO order "the corrective action to cease regarding the subject task-order and Nexagen's award be affirmed."  AR at 48.  On May 1, 2015, the GAO dismissed Nexagen's protest finding that Nexagen's challenge to the Army's actions was premature because the Army's corrective actions were ongoing.  AR at 4752.

On May 4, 2015, the Army's contracting officer terminated Nexagen's contract to provide the data strategy and software support services called for in the task order for default, because Nexagen failed to address the deficiencies set forth in the government's cure notices. AR at 806.  The problems with the task order did not, however, end with the termination of Nexagen's contract.  On May 6, 2015, the Army canceled TOR 2031-1 because of "material flaws in the evaluation record which made re-evaluation and a subsequent award impossible." AR at 816.  Following the cancelation of TOR 2031-1, the Army informed Nexagen and others that the government intended to re-solicit proposals to perform the task order by issuing yet

another task order request−TOR 2057.  AR at 3986-987.  The Army issued a draft performance work statement for TOR 2057 on May 12, 2015.  AR at 3988-4023.

### 2.    Nexagen's GAO Bid Protest And CDA Claim

On May 14, 2015, Nexagen again filed a protest before the GAO challenging the Army's decision to terminate its contract, to provide data strategy and software support services pursuant to the subject task order, for default and the Army's subsequent decision to issue TOR 2057.  AR at 10, 26.  On May 15, 2015, the Army's contracting officer converted the termination of Nexagen's contract for default into a termination for convenience.  AR at 809.

On May 19, 2015, Nexagen modified its protest before the GAO to include a claim for bad faith termination for convenience.  AR at 39.  On June 26, 2015, Nexagen filed its complaint in this matter.  *See generally* Comp.  On July 6, 2015, the GAO issued a decision dismissing Nexagen's protest because Nexagen failed to timely file comments on the agency report, as required by the GAO's Bid Protest Regulations.  AR at 4753-754.

On August 1, 2015, Nexagen submitted a certified claim to the Army's contracting officer seeking $40,244,379.94 in monetary damages.  Am. Comp. at 3; Pl. Resp. at Attachment 41.  In its claim, Nexagen sought to recover monetary damages for the breach of its contract with the Army.  Am. Comp. at 3; Pl. Resp. at Attachment 41.  In addition, Nexagen also challenged the Army's decision to terminate its contract to provide services pursuant to the subject task order for default and subsequently for convenience.  Am. Comp. at 3; Pl. Resp. at Attachment 41.  On August 25, 2015, the contracting officer informed Nexagen that she did not possess jurisdiction to consider Nexagen's claim because of Nexagen's pending litigation in this Court.  Am. Comp. at 3; Pl. Resp. at Attachment 39.

### B.    Procedural History

On June 26, 2015, Nexagen filed its complaint in this matter.  *See generally* Comp.  On June 29, 2015, Nexagen filed a motion for preliminary injunction.  *See generally* Pl. Mot. for Pre. Inj.  On June 30, 2015, Nexagen filed a motion for protective order.  *See generally* Pl. Mot. for Protective Order.  The Court subsequently issued a Protective Order in this matter on June 30, 2015.  *See generally* Order Granting Mot. for Protective Order.

The government filed the administrative record in this case on July 27, 2015, and subsequently corrected the administrative record on August 21, 2015. *See generally* AR. On August 18, 2015, the government filed a motion to dismiss this matter for lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1). *See generally* Def. Mot. Alternatively, the government also moved to dismiss the complaint for failure to state a claim upon which relief may be granted, pursuant to RCFC 12(b)(6). *Id.*

On September 3, 2015, Nexagen filed an amended complaint, in which Nexagen withdrew its motion for preliminary injunction. Am. Comp. at 16. On September 10, 2015, Nexagen filed its response to the government's motion to dismiss. *See generally* Pl. Resp. On September 21, 2015, the government filed a reply in support of its motion to dismiss. *See generally* Def. Reply. The government's motion to dismiss having been fully briefed, the Court addresses the pending motion.

## III.    LEGAL STANDARDS

### A.    Jurisdiction And RCFC 12(b)(1)

When deciding a motion to dismiss for lack of subject-matter jurisdiction, this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1328 (Fed. Cir. 2006); RCFC 12(b)(1). Plaintiff bears the burden of establishing subject-matter jurisdiction, and must do so by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). And so, should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006).

In this regard, the United States Court of Federal Claims is a court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Specifically, the Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).  The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists."  *United States v. Testan,* 424 U.S. 392, 398 (1976).  And so, to come within the jurisdictional reach of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.  *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005).  If the Court finds that the source of law alleged is not money-mandating, the Court must dismiss the case for lack of jurisdiction.  *Id.* at 1173; RCFC 12(b)(1).

With respect to bid protest matters, the Tucker Act also grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  In bid protest cases, this Court reviews agency actions under the "arbitrary and capricious" standard.  *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the Administrative Procedure Act).  And so, under this standard, an award may be set aside if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure."  *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  The United States Court of Appeals for the Federal Circuit has explained that:

> When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a "heavy burden" of showing that the award decision had no rational basis.  When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Banknote Corp. of Am., Inc.*, 365 F.3d at 1351; *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (in reviewing an agency's procurement decision, the Court should recognize that the agency's decision is entitled to a "presumption of regularity").

The Court's jurisdiction over bid protest matters does not, however, generally extend to challenges of task orders.  In this regard, the Federal Acquisition Streamlining Act ("FASA") provides in pertinent part that:

> (1) A protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for−(A) a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued; or (B) a protest of an order valued in excess of $10,000,000. (2) Notwithstanding section 3556 of title 31, the Comptroller General of the United States shall have exclusive jurisdiction of a protest authorized under paragraph (1)(B).

10 U.S.C. § 2304c(e); *see also BayFirst Solutions, LLC v. United States*, 104 Fed. Cl. 493, 502 (2012) ("This court has consistently interpreted the ban as prohibiting task order protests in this court on any grounds other than the specific excepted allegations of excessive scope, period or value of the proposed task order.").

### B.      RCFC 12(b)(6)

Under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims, a defendant may move for dismissal of the complaint if plaintiff "fail[s] to state a claim upon which relief can be granted."  RCFC 12(b)(6).  To survive a motion to dismiss under RCFC 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Pleadings must establish "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citing *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  And so, "a *pro se* plaintiff still must establish the requisite elements of his claim."  *See Sahagun-Pelayo v. United States*, No. 2014-5126, 2015 WL 1004362, at *2, *4 (Fed. Cir. Mar. 9, 2015) (quoting *Humphrey v. United States*, 52 Fed. Cl. 593, 595 (2002)).

### C.      The Contract Disputes Act

The Tucker Act also grants this Court "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 [the Contract

Disputes Act ("CDA")], . . . on which a decision of the contracting officer has been issued under section 6 of that Act." 28 U.S.C. § 1491(a)(2). And so, to establish jurisdiction in this Court to consider a claim brought pursuant to the CDA, a plaintiff must demonstrate compliance with the requirements of that Act. *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995); *see M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1328 (Fed. Cir. 2010) (finding that the CDA's requirements are mandatory and are jurisdictional prerequisites before a contractor can file suit in this Court).

In this regard, a plaintiff must: (1) submit a proper claim to the relevant contracting officer, which must be properly certified if the amount sought is more than $100,000; and (2) obtain a final decision from the contracting officer on that claim before filing in this Court. 41 U.S.C. § 7103(a); *Reflectone, Inc.*, 60 F.3d at 1575-76.

A contractor may obtain either an actual or a deemed final decision from the contracting officer. *Claude E. Atkins Enters., Inc. v. United States*, 27 Fed. Cl. 142, 143 (1992). For claims that seek $100,000 or less, the CDA provides that a contracting officer must issue a final decision within 60 days. 41 U.S.C. § 7103(f)(1). For claims that seek more than $100,000, the CDA provides that the contracting officer must issue a decision on the certified claim within 60 days, or the contracting officer must notify the contractor of the time within which a decision will be issued. 41 U.S.C. § 7103(f)(2). If the contracting officer denies the claim within the required time period, the claim is actually denied. *Id.*; *Claude E. Atkins Enters.*, 27 Fed. Cl. at 143. However, a failure to issue a decision within the required time period "is deemed to be a decision by the contracting officer denying the claim." 41 U.S.C. § 7103(f)(5). A denial−actual or deemed−authorizes an "appeal or action on the claim as otherwise provided in [the CDA]. However, the tribunal concerned may, at its option, stay the proceedings of the appeal or action to obtain a decision by the contracting officer." *Id.*

**IV.   ANALYSIS**

The government has moved to dismiss this matter on four grounds: First, the government argues that the Court does not possess jurisdiction to entertain Nexagen's claims for damages, or other relief, related to the termination of its contract to provide data strategy and software support services pursuant to TOR 2031-1, because Nexagen did not submit this claim to the Army's contracting officer before commencing this case. Def. Mot. at 8. Second, the

government argues that the Court does not possess jurisdiction to entertain Nexagen's challenges to the corrective actions that the Army undertook in relation to TOR 2031-1 and TOR 2057, because FASA bars the Court from entertaining such claims. *Id.* In addition, the government argues that the Court does not possess jurisdiction to entertain Nexagen's challenge to the termination of its contract for default, because the Army has converted the termination to one for convenience. *Id.* Lastly, the government also contends that, to the extent that the initial termination of Nexagen's contract for default could establish jurisdiction, Nexagen's claim challenging the termination for default is moot because the Army has already converted the termination to one for convenience. *Id.* at 9. For the reasons discussed below, the Court does not possess subject-matter jurisdiction to consider Nexagen's claims. And so, the Court must dismiss the amended complaint.

A.    **The Court Does Not Possess Jurisdiction To Consider Nexagen's Claims**

1.    **Nexagen Did Not Submit A Certified CDA Claim Before Commencing This Action**

As a threshold matter, the Court does not possess jurisdiction to consider Nexagen's claims related to the termination and alleged breach of its contract, because Nexagen did not submit this claim to the Army's contracting officer before commencing this action. In its amended complaint, Nexagen alleges that the Army "repeatedly interfered with Nexagen's performance [under TOR 2031-1], and in so acting materially breached the Contract, long before it terminated Nexagen for default." Am. Comp. at 9. Nexagen also alleges that the government improperly terminated its contract to provide data strategy and software support services pursuant to the subject task order. *Id.* Nexagen maintains that the Court possesses jurisdiction to consider these claims pursuant to the Contract Disputes Act. *Id.* at 3; Pl. Resp. at 5.

It is well established that under the CDA a contractor must first submit a written claim to the contracting officer, and obtain a final decision on that claim, before bringing suit in this Court. 41 U.S.C. § 7103(a); *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996). In addition, for claims seeking more than $100,000—as is the case here—a contractor must also properly certify the claim before submitting it to the contracting officer. 41 U.S.C. § 7103(b); *Reflectone, Inc.*, 60 F.3d at 1575-76. And so, this Court has long recognized that it does not possess jurisdiction to consider claims for more than $100,000 brought pursuant

to the CDA when the claim has not been previously certified and submitted to a contracting officer for a final decision. *James M. Ellett*, 93 F.3d at 1541-42; *Reflectone, Inc.*, 60 F.3d at 1575-76.

The undisputed facts in this case make clear that Nexagen did not submit a certified CDA claim to the Army's contracting officer before commencing this matter. In this regard, Nexagen filed its complaint on June 26, 2015, and subsequently amended the complaint on September 3, 2015. *See generally* Comp.; Am. Comp.[2] It is without dispute that Nexagen submitted its certified claim for damages related to the termination and alleged breach of its contract to the Army's contracting officer on August 1, 2015. Am. Comp. at 3; Pl. Resp. at Attachment 41. Because Nexagen submitted this claim to the contracting officer more than a month after commencing this litigation, Nexagen has not met the jurisdictional perquisites for pursuing a CDA claim before this Court. Am. Comp. at 3; Pl. Resp. at Attachment 41; *See James M. Ellett*, 93 F.3d at 1541-42. And so, the Court must dismiss Nexagen's contract claims for lack of subject-matter jurisdiction. RCFC 12(b)(1).[3]

**2.    Nexagen's Claims Challenging The Army's Corrective Actions Are Jurisdictionally Precluded Under FASA**

The Court also does not possess jurisdiction to consider Nexagen's claims related to the corrective actions undertaken by the Army in connection with the task order to provide data strategy and software support services. In its amended complaint, Nexagen alleges that the Army's corrective actions with respect to TOR 2031-1 and TOR 2057 "violated applicable

---

[2] The date of the commencement of this matter relates back to the filing of the original complaint on June 26, 2015. RCFC 15(c)(1) (an amendment to a complaint relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out in the original complaint).

[3] Nexagen's contention that the Court may consider this matter after the Army's contracting officer issues a final decision is without merit. Pl. Resp. at 18-19, 22. The contracting officer has been divested of any authority to decide Nexagen's claims because Nexagen commenced this litigation. *See Sharman Co. v. United States*, 2 F.3d 1564, 1571 (Fed. Cir. 1993) *overruled on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995). Nexagen's contention that the Court possesses jurisdiction to entertain its contract claims because the Army already denied Nexagen's claim is also without merit. Pl. Resp. at 20. It is well settled that a contracting officer cannot issue a final decision without the contractor first submitting a written claim. *M. Maropakis*, 609 F.3d at 1328 (finding that a "contracting officer has no authority to issue a final decision" if the contractor's submission fails to meet all the requirements for a claim under the CDA).

procurement regulations and were arbitrary and capricious and unlawful."  Am. Comp. at 11.
Nexagen also alleges that "no lawful bases exists for the re-solicitation under TOR 2057."  *Id.* at
14.

It is well established that this Court does not possess jurisdiction to entertain Nexagen's
challenges to the task order at issue in this case.  In this regard, FASA provides in pertinent part
that:

> (1) A protest is not authorized in connection with the issuance or proposed
> issuance of a task or delivery order except for−(A) a protest on the ground that the
> order increases the scope, period, or maximum value of the contract under which
> the order is issued; or (B) a protest of an order valued in excess of $10,000,000.
> (2) Notwithstanding section 3556 of title 31, the Comptroller General of the
> United States shall have exclusive jurisdiction of a protest authorized under
> paragraph (1)(B).

10 U.S.C. § 2304c(e).  And so, FASA prohibits a plaintiff from bringing a challenge to the
issuance, or proposed issuance, of a task order in this Court, unless the challenge is based upon
the ground that the task order would increase the scope, period, or maximum value of the
underlying contract. [4]  *Id.*

In this case, Nexagen challenges the Army's decision to take corrective actions by
cancelling TOR 2031-1 and subsequently issuing TOR 2057.  Am. Comp. at 11, 13-14.  FASA
does not authorize this Court to hear Nexagen's claims.  Rather, FASA's exception for protests
that challenge the "scope, period, or maximum value of the contract under which the order is
issued" applies only in cases where the protester is challenging "the underlying procurement
vehicle, not any subsequent specific task order or award."  *Innovative Mgmt. Concepts, Inc. v.
United States*, 119 Fed. Cl. 240, 242-245 (2014); *Omega World Travel, Inc. v. United States*, 82
Fed. Cl. 452, 464 (2008).

Here, Nexagen alleges that the Army required that it meet additional requirements that
were not part of TOR 2031-1.  Pl. Resp. at 23; *see* 10 U.S.C. § 2304c(e)(1)(A).  This is not a

---

[4] The prohibition against bringing a protest of a task order under FASA applies to protests where−like
here−the agency has elected to take corrective actions to set aside the award of a task order and to solicit a
new task order.  *Mission Essential Pers., LLC v. United States*, 104 Fed. Cl. 170, 178-79 (2012) (FASA's
ban applies to corrective action); *Guam Indus. Servs., Inc. v. United States*, 122 Fed. Cl. 546, 553-56
(2015) (FASA's ban applies to the cancellation of a task order).

challenge that falls within the specific excepted allegations of excessive scope, period or value of the task order as required under FASA. *BayFirst Solutions, LLC*, 104 Fed. Cl. at 502. And so, Nexagen cannot properly rely upon the scope exception to FASA to establish jurisdiction in this case.

In addition, to the extent that the subject task order is valued at more than $10,000,000, jurisdiction over Nexagen's protest would fall exclusively within the jurisdiction of the Comptroller General of the United States. 10 U.S.C. § 2304c(e)(2) ("the Comptroller General of the United States shall have exclusive jurisdiction of a protest authorized under paragraph (1)(B)"); *Innovative Mgmt. Concepts, Inc. v. United States*, 119 Fed. Cl. 240, 245 (2014) ("FASA authorizes the United States Court of Federal Claims only to adjudicate 'a protest on the ground that the [task] order increases the scope, period, or maximum value of the contract under which the order is issued [.]'" (citing 10 U.S.C. § 2304c(e)(1)(A)). And so, the Court must dismiss Nexagen's challenge to the task order at issue in this matter. RCFC 12(b)(1).

**B.      Nexagen's Termination For Default Claim Is Moot**

Lastly, to the extent that Nexagen is challenging the termination of its contract to provide data strategy and software support services pursuant to the subject task order for default, that claim must be dismissed as moot. This Court may consider challenges to the government's decision to terminate a contract for default. *Malone v. United States*, 849 F.2d 1441, 1443-44 (Fed. Cir. 1988); *Deponte Investments, Inc. v. United States*, 54 Fed. Cl. 112, 116 (2002) (The "Court has jurisdiction to decide a challenge to the contracting officer's termination for default. However, . . . a decision to terminate a contract for default is separate and distinct from a decision on any claims by a contractor for termination costs or damages."). But, the only relief that the Court may grant in such matters is a declaratory judgment converting the termination for default into a termination for convenience. *Armour of Am. v. United States*, 69 Fed. Cl. 587, 591-92 (2006) (the Court of Federal Claims possesses jurisdiction over plaintiff's claim that the "default termination was improper" and may convert the termination for default into a termination for convenience).

In this case, it is without dispute that the Army converted the termination of Nexagen's contract for default into a termination for convenience on May 15, 2015. AR at 809. And so, the Army has already provided Nexagen with the only relief available to Nexagen before this Court.

*Armour of Am.*, 69 Fed. Cl. at 591-92.  And so, Nexagen's challenge to the termination of its contract for default is moot.  *White Buffalo Const., Inc. v. United States*, 546 F. App'x 952, 955 (Fed. Cir. 2013) ("the Court of Federal Claims properly found that the conversion [of plaintiff's termination for default to a termination for convenience] mooted the claims presented").  Dismissal of this claim is therefore warranted.  RCFC 12(b)(1); RCFC 12(b)(6).[5]

## V.    CONCLUSION

In sum, Nexagen has failed to meet its burden to show that this Court possesses jurisdiction to entertain its claims challenging the termination and alleged breach of its contract with the Army.  The undisputed facts in this matter make clear that Nexagen did not submit a certified claim to the Army's contracting officer before commencing this action.  As a result, Nexagen's contract claims are jurisdictionally barred under the Contract Disputes Act.  The Court also does not possess jurisdiction to entertain Nexagen's claims challenging the Army's corrective actions related to the task order at issue in this case, because the Federal Acquisition Streamlining Act precludes bringing such challenges in this Court.  Finally, Nexagen's claim challenging the termination of its contract for default must also be dismissed as moot, because the Army has already converted the termination of the contract into one for convenience.  And so, for all of these reasons, the Court must dismiss this matter.

For the foregoing reasons, the Court **GRANTS** defendant's motion to dismiss**.**

The Clerk is directed to enter judgment accordingly.

Each party shall bear their own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on June 30, 2015.  This Memorandum Opinion and Order shall therefore be filed under seal.  The

---

[5] The government moves to dismiss Nexagen's termination for default claim pursuant to RCFC 12(b)(1) and RCFC 12(b)(6).  Def. Mot. at 13-15.  The legal standard applied by the Court in considering whether to dismiss Nexagen's claims as moot is the same under both rules.  *Coastal Envtl. Grp., Inc. v. United States*, 114 Fed. Cl. 124, 130 (2013) ("Regardless of whether a moot claim should be dismissed for lack of subject matter jurisdiction or for failure to state a claim upon which the court could grant relief, the standard applied by the court in reviewing a motion urging dismissal of a claim as moot is the same: the court assumes that the allegations in the complaint are true and construes those allegations in the plaintiff's favor." (citations omitted)).

parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication.

The parties shall **FILE** a joint status report, on or before **January 21, 2016**, identifying the information, if any, that they contend should be redacted in this Memorandum Opinion and Order, together with an explanation of the basis for each proposed redaction.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge